UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Kelsey, Beales and Senior Judge Clements


CARMEN ALCAZAR

v.      Record No. 1189-13-3

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT

CARMEN ALCAZAR

v.      Record No. 1190-13-3

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION[*]
PER CURIAM
JANUARY 7, 2014


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

(W. Andrew Harding, on brief), for appellant. Appellant submitting
on brief.

(Rachel Errett Figura, Assistant County Attorney; Sherwin John
Jacobs, Guardian *ad litem* for the minor children, on brief), for
appellee. Appellee and Guardian *ad litem* submitting on brief.


Carmen Alcazar (mother) appeals orders terminating her parental rights to her children.

Mother argues that the trial court erred by terminating her parental rights because she substantially

remedied the conditions which led to the removal of the children pursuant to Code § 16.1-283(C)(2)

and the Harrisonburg Rockingham Social Services District (the Department) did not prove the

requirements for termination pursuant to Code § 16.1-283(C)(1).[1]  Upon reviewing the record and

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We find that mother preserved the issues for appeal in her closing argument to the trial
court. See Rule 5A:18.

briefs of the parties, we conclude that the trial court did not err. Accordingly, we affirm the decisions of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Mother has two children who are the subject of this appeal.[2] Since 2003, the Department has been involved with mother and the children. There were issues of inadequate hygiene, shelter, and domestic violence.

In March 2011, mother and her two children were living with Angel Pacheco, mother's boyfriend. The Department had received a complaint that mother and Pacheco were selling prescription pills and drugs out of the home. The drug task force and sheriff's office searched the home and found packaged pills, drugs, drug paraphernalia, and cash. The children told the Department that Pacheco's "friends come over and give him money for the green stuff. [Pacheco] smokes the green stuff and white powder." They also said that Pacheco "goes to New York to get the white powder and smokes it with a lighter." The Department removed the children on March 29, 2011.

Both mother and Pacheco were present at the emergency removal hearing and the preliminary hearing. Pacheco informed the court that he did not want to be part of the case and that he would not cooperate with the Department.

When children are removed from their home, the Department's policy is to involve adults who are living in the home with the children. The Department conducts criminal background

---

[2] The children's father, Hector Santiago, had limited involvement in this case. His parental rights were terminated, and he did not appeal that decision.

and child protective services (CPS) checks on those adults. If the adult passes the background checks, then the Department offers services, including drug testing and substance abuse counseling. The adult also would be involved in any of the Department's meetings and supervised visitation. The Department would not return a child home to his mother without the required background checks and involvement of a live-in boyfriend.

In addition to Pacheco's lack of cooperation, the Department was concerned about placing the children in the same home with Pacheco because he had a felony conviction for drug distribution. The Department informed mother that if Pacheco would not cooperate with the Department, then the children could not be placed in the same house with him, and mother would have to stop seeing him. The Department explained that mother needed to obtain suitable housing for her and the children. At the time, Pacheco was her payee for her SSI payments, and the Department advised her to change her payee. The Department also was concerned about her parenting skills and communication skills. During visitations, mother primarily spoke Spanish, and the children primarily spoke English.

The Department offered mother supervised visitation, parenting education and classes, individual counseling, and English classes. The Department also offered the services of a bilingual worker for mother. Mother falsely told the Department that she ended her relationship with Pacheco. She never asked the Department to involve Pacheco in the foster care case. The Department found that mother was not compliant with its requirements because not only did she not take English classes, but she refused to separate from Pacheco. The Department did not find suitable any housing in which mother and Pacheco resided together.

The children were "fearful" of Pacheco and told the social worker that he was "mean." In November 2011, mother visited with the children, and after the visit, Pacheco drove by and

waved at the children. One of the children "had an emotional breakdown for hours. He tore up the car that he was in, just was all over the place. He was very hard to be consoled."

On April 4, 2012, the Harrisonburg-Rockingham Juvenile and Domestic Relations District Court (the JDR court) entered a child protective order for the children. The order stated that mother would ensure that the children had no contact with Pacheco. Mother assured the Department that she was no longer involved with Pacheco.

The Department subsequently worked with mother in finding housing and furniture. It also facilitated unsupervised visits between the children and mother. In late July 2012, the children had an unsupervised visit with mother for the weekend. When the social worker picked up the children, they informed her that Pacheco had been at the home and that all four of them went to Maryland for the weekend. Mother did not have permission to take the children out of state. Mother told the children not to tell the social worker about their visit with Pacheco. When the Department confronted mother about the incident, mother denied that Pacheco had been around the children. She said that the children were lying and that they went to Maryland with a different man, not Pacheco. After this incident, mother had no further contact with the children. She never asked the Department for visitations, never sent the children a letter or card, and never contacted the Department to check on the children. Her attorney tried to coordinate a visit in October 2012, but the guardian *ad litem* recommended that mother not visit with the children at that point.

On August 28, 2012, the Department filed a petition to terminate mother's parental rights to the children. The JDR court terminated mother's parental rights on December 19, 2012, and mother appealed to the circuit court. After hearing testimony and argument on June 10, 2013, the circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(1) and (C)(2). These appeals followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

*Termination pursuant to Code § 16.1-283(C)(2)*

Mother argues that the trial court erred in terminating her parental rights pursuant to Code § 16.1-283(C)(2) because the Department did not prove that mother failed to substantially remedy the conditions which led to the removal.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

The Department had been involved with mother since 2003. It ultimately removed the children because mother was living with a man "in a house where drugs [were] sold and consumed frequently." Mother was charged with possession of various narcotics, and Pacheco was charged with possession of marijuana. Both received a deferred disposition as a first offender.

After the children were removed from the home, Pacheco informed the Department that he would not cooperate with them. The Department could not conduct criminal background

- 5 -

checks or CPS checks on Pacheco. Since Pacheco could not be investigated, the Department told mother that she could not live with him if she wanted the children returned to her custody. Mother told the Department that she had ended her relationship with Pacheco, but there was evidence to the contrary.

In April 2012, the Department sought a protective order, which prohibited mother from allowing any contact between the children and Pacheco. During the summer of 2012, mother violated the protective order, and the children spent the weekend with her and Pacheco.

In addition, the Department required mother to participate in English classes. She primarily spoke Spanish, and the children primarily spoke English. She never took the required classes.

At the time of the trial, the children had been in foster care for approximately twenty-six months. There was evidence that the children were doing well. However, while the children were in foster care, mother did not substantially remedy the situation that led to the children being placed in and continuing in foster care. The trial court noted that "mother just simply doesn't seem to have the wherewithal to correct these problems and put the children in a stable situation which they need."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

*Termination pursuant to Code § 16.1-283(C)(1)*

Mother argues that the trial court erred in terminating her parental rights pursuant to Code § 16.1-283(C)(1) because the Department failed to meet its burden. She contends she tried to visit with the children, but visitation was denied. She also asserts that she and Pacheco showed dramatic improvement in their lives, since the children were placed in foster care.

Code § 16.1-283(C)(1) states a parent's parental rights may be terminated if:

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

The Department ceased mother's visitations with the children in August 2012, after it discovered she violated the protective order by allowing the children to spend the weekend not only with her but also with Pacheco. She also took the children out of state without the Department's permission. After mother's visitations stopped, she did not contact the Department to inquire about the children. She did not ask if she could send the children cards or letters. In October 2012, her attorney tried to arrange a visitation, but the guardian *ad litem* did not think it was in the children's best interests.

Mother's future plans for the children involved Pacheco. There was evidence presented that they intended to marry and raise the children together. However, the protective order prohibited mother from allowing the children to have contact with Pacheco. Mother's plans were not viable.

The trial court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(C)(1).

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>